**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**SEAN C.,**

**Plaintiff,**

**v.**

**20-CV-258**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct any and all further proceedings in this case, including entry of final judgment. Dkt. No. 16. Sean C. ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for benefits. This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. Nos. 12, 13. For the following reasons, Plaintiff's motion (Dkt. No. 12) is granted, and the Commissioner's motion (Dkt. No. 13) is denied.

## BACKGROUND

On April 19, 2013, Plaintiff filed for Disability Insurance Benefits ("DIB") alleging disability beginning on April 30, 2010, due to learning disabilities, depression,

anxiety, and attention deficit disorder (ADD). Tr. at 60, 125.[1] Plaintiff's claim was denied at the initial level and he requested review. Tr. at 73-78. Administrative Law Judge Timothy McGuan ("the ALJ") conducted a hearing on September 15, 2015, and denied Plaintiff's claim on September 25, 2015. Tr. at 18-59. The Appeals Council denied Plaintiff's request for review and Plaintiff filed an appeal with this Court. Tr. at 3-7. On August 27, 2018, the Honorable William M. Skretny remanded the case for further proceedings, after finding that the ALJ failed to properly consider the opinions of Plaintiff's treating and examining physicians, Drs. Goldin and Maiden, and that "his rejection of those opinions is not supported by substantial evidence in the record, particularly considering that [the] ALJ cites no contradictory medical opinion evidence." Tr. at 570. Judge Skretny declined to opine on whether the ALJ should have found Plaintiff's learning disability to be a severe impairment but noted that "on remand, the ALJ is free to address this argument to the extent he deems it necessary." Tr. at 570.

Pursuant to the Remand Order, the ALJ held a second hearing on October 18, 2019. Tr. at 453. Plaintiff, who was represented by counsel, testified once again as did a vocational expert ("VE"). Tr. at 453-67. On November 6, 2019, the ALJ issued a decision in which he found that Plaintiff was not disabled from April 30, 2010, the alleged onset date, through December 31, 2015, the date last insured, and therefore, was not entitled to benefits. Tr. at 429-44. Plaintiff commenced the current action on February 28, 2020. Dkt. No. 1.

---

[1] Citations to "Tr. __" refer to the pages of the administrative transcript, which appears at Docket No. 8.

## LEGAL STANDARD

**Disability Determination**

The claimant bears the ultimate burden of proving disability throughout the period for which benefits are sought. *See* 20 C.F.R. § 416.912(a); *Schauer v. Schweiker*, 675 F.2d 55, 59 (2d Cir. 1982). The claimant is disabled only if he shows that he is unable to engage in any substantial gainful activity due to any medically determinable physical or mental impairment which has lasted, or can be expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.909; *see Barnhart v. Walton*, 535 U.S. 212, 216-22 (2002).

A disabling physical or mental impairment is an impairment that results from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). Congress places the burden upon the claimant to establish disability by requiring him to "furnish such medical and other evidence of the existence [of disability] as the Commissioner of Social Security may require." 42 U.S.C. § 1382c(a)(3)(H)(i). The function of deciding whether a person is under a disability within the meaning of the Act belongs to the Commissioner. 20 C.F.R. § 416.927(e)(1); *Pena v. Chater*, 968 F. Supp. 930, 937 (S.D.N.Y. 1997).

The Commissioner has established a five-step sequential evaluation for adjudicating disability claims set forth at 20 C.F.R. § 416.920. Plaintiff has the burden at the first four steps. The Commissioner has the burden at the fifth step of

demonstrating that the claimant can perform other work existing in significant numbers in the national economy, but the burden of proving disability is always on the claimant. *See* 20 C.F.R. § 416.920; *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (stating that "[t]he claimant bears the ultimate burden of proving [disability] throughout the period for which benefits are sought") (citation omitted).

**District Court Review**

42 U.S.C. § 405(g) authorizes a district court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). Section 405(g) limits the scope of the Court's review to two inquiries: whether the Commissioner's conclusions were based upon an erroneous legal standard, and whether the Commissioner's findings were supported by substantial evidence in the record as a whole. *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir. 2003). Substantial evidence is "more than a mere scintilla." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (emphasis added and citation omitted). The substantial evidence standard of review is a very deferential standard, even more so than the "clearly erroneous" standard. *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 447-48 (2d Cir. 2012) (citing *Dickinson v. Zurko*, 527 U.S. 150, 153 (1999)).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). If there is substantial evidence for the ALJ's determination, the decision must be upheld, even if there is also substantial evidence for the plaintiff's position. *See Perez v. Chater*, 77 F.3d 41, 46-47 (2d Cir. 1996); *Conlin ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 384 (W.D.N.Y. 2015). Likewise, where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## DISCUSSION AND ANALYSIS

### The ALJ's Decision

The ALJ analyzed Plaintiff's claims using the familiar five-step process. *Lynch v. Astrue*, No. 07-CV-249-JTC, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 30, 2010, the alleged onset date, through his date last insured, December 31, 2015. Tr. at 434. The ALJ concluded at step two that Plaintiff's obesity, major depressive disorder, dependent personality disorder, and learning disorder were severe impairments. Tr. at 434. At step three, he concluded that Plaintiff did not have an impairment or combination of impairments which met or equaled the Listings, giving special consideration to Listing 12.02 (Neurocognitive

Disorders), Listing 12.04 (Depressive, Bipolar, and Related Disorders), Listing 12.08 (Personality and Impulse Control Disorders), and Social Security Ruling 19-2p (Evaluating Cases Involving Obesity). Tr. at 435-37.

The ALJ found that Plaintiff retained the RFC to perform medium work as defined by 20 C.F.R. §§ 404.1567(c), except he could occasionally interact with the public. The ALJ further concluded that Plaintiff had no limitations interacting with co-workers or supervisors, and he could perform simple, unskilled work. Tr. at 437. At step four, the ALJ found that Plaintiff could not perform any past relevant work. Tr. at 442. The ALJ then proceeded to step five, where he relied upon the testimony of the VE in finding that Plaintiff could do other work that existed in significant numbers in the national economy, such as the medium jobs of dishwasher, package machine tender, and hand packager. Tr. at 443. Thus, the ALJ concluded that Plaintiff had not been under a disability as defined by the Act at any point during the relevant period. Tr. at 444.

**Judgment on the Pleadings**

As noted above, the parties have cross-moved for judgment on the pleadings. Dkt. Nos. 12, 13. Plaintiff argues that the ALJ erred in failing to account for the stress limitations found by consultative examiner, Robert J. Maiden, PhD, or otherwise explain his rationale for rejecting them, after giving the psychologist's opinion great weight, and by rejecting without good reason the opinion of Plaintiff's treating psychiatrist, Dr. Nancy Goldin. Dkt. No. 12-1, pp. 18-30. The Commissioner disagrees.

Dkt. No. 14, pp. 6-17. Having reviewed the record in its entirety, this Court finds that the ALJ's decision is not supported by substantial evidence.

**Dr. Maiden's Consultative Opinion**

Dr. Maiden conducted a consultative psychological evaluation of Plaintiff on July 9, 2013. Tr. at 341-345. Plaintiff, then 29 years old, stated to Dr. Maiden, "I don't get along well with others," and reported that he was hospitalized at age 15 after he "told everyone [at school], I was going to kill them." Tr. at 341-42. Plaintiff also reported that he had difficulty sleeping, suffered from periods of depression, and crying spells, and was upset about not having a girlfriend or job. Tr. at 342. "Furthermore[,] I have ADD and my vision is all blurry," Plaintiff stated. Tr. at 342. Plaintiff reported that he drank on special occasions and used marijuana recreationally from time to time. Tr. at 343.

Upon exam, Dr. Maiden noted that Plaintiff was unable to do serial 7s backwards, but could perform serial 3s, and was unable to solve simple arithmetic problems. When asked what the saying "strike when the iron is hot" meant, Plaintiff stated "it means to beat someone up while you are pumped up." Tr. at 343. When presented with a hypothetical social situation, Plaintiff opined "everyone should be for himself." Tr. at 343. Plaintiff's item recall was fine initially, but after a delay he only remembered 2 of 4 items and was tangential in his effort to recall. Tr. at 343. Dr. Maiden reported that Plaintiff was somewhat immature; he tended to fidget; his speech was stammering; his thought processes were mildly confused; his mood was reported

as “whatever;” his attention and concentration were “reasonably intact” as was recent and remote memory (although digit span was inadequate); and his insight and judgment were poor. Tr. at 343.

Plaintiff reported that he needed reminders to bathe and dress himself, he could not cook, and he wasn’t good at cleaning “in general.” Tr. at 343-44. Plaintiff’s father did all of the shopping and handled Plaintiff’s money. Tr. at 344. When asked if he could manage his own money, Plaintiff said, “hell no. I spend hundreds of dollars in hours.” Tr. at 344. Plaintiff had a driver’s permit but no license, and socialized sparingly. Tr. at 344. His hobbies and interests included video games, car rides, swimming, and “looking for turtles.” Tr. at 344. Plaintiff reported that he usually went to bed around 3:00 or 3:30 in the morning and woke up around noon. Tr. at 344. He complained, “there is something wrong with me. I keep gaining weight. I can’t write or spell. I suck at everything. Manual labor is the only thing I can do, and I am not good at that either.” Tr. at 344. Dr. Maiden noted that Plaintiff was fired from a Public Works job. According to Plaintiff, “I wasn’t doing my job right. People were mean to me there.” Tr. at 342.[2]

Dr. Maiden diagnosed Plaintiff with sporadic depression, borderline intellectual functioning, and obesity. Tr. at 344-45. He made the following findings regarding Plaintiff’s vocational capacity:

[2] Plaintiff’s father confirmed he called in a favor from a friend to get his son this job, but Plaintiff was fired because he was not able to follow directions, and he was getting picked on and “semi-bullied,” because he was unable to run the machines. Tr. at 52.

> [Sean] is able to follow and understand simple directions and instruction, perform simple tasks with some supervision, [but he has] difficulty maintaining attention and concentration for prolonged periods of time. He may have difficulty maintaining a regular schedule. He is challenged by new tasks. Most likely, [he] is unable to perform complex tasks. He has difficulty making appropriate decisions, relating adequately with others, or dealing with stress. . . . Results of the present test appear to be consistent with cognitive problems and they may interfere with the claimant's ability to function on a daily basis.

Tr. at 344. Dr. Maiden was guarded as to Plaintiff's prognosis given his inability to find gainful and stable employment or to manage his own funds. Tr. at 345.

**The ALJ's Evaluation of Dr. Maiden's Opinion**

Generally, an ALJ must "reconcile discrepancies between [his] RFC assessment and medical source statements." *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006). When the RFC conflicts with a medical opinion, an ALJ must "explain why the opinion was not adopted." *Id*. While an "ALJ is not obligated to 'reconcile explicitly every conflicting shred of medical testimony,' he cannot simply selectively choose evidence in the record that supports his conclusions." *Id*. (*citing Gecevic v. Secretary of Health & Human Servs*., 882 F.Supp. 278, 286 (E.D.N.Y. 1995)); *see also Caternolo v. Astrue*, No. 6:11-CV-6601 MAT, 2013 WL 1819264, at *9 (W.D.N.Y. Apr. 29, 2013) ("It is a fundamental tenet of Social Security law that an ALJ cannot pick and choose only parts of a medical opinion that support his determination.") (internal quotations omitted). "Thus, when an ALJ adopts only portions of a medical opinion, he must explain why he rejected the remaining portions." *Dotson v. Berryhill*, No. 17-CV-129-FPG, 2018 WL 3064195, at *3 (W.D.N.Y. June 21, 2018) (citing *Raymer v. Colvin*, No. 14-CV-6009P, 2015 WL 5032669, at *5 (W.D.N.Y. Aug. 25, 2015))

(remanding a case in which the ALJ accepted a portion of a medical source statement, but ignored the specific limitations); *see Evans v. Berryhill*, No. 16-CV-801 (MAT), 2018 WL 1377122, at *4 (W.D.N.Y. Mar. 19, 2018) (remanding claimant's case because the ALJ gave the non-examining opinion great weight, but the mental RFC contradicted the opinion).

In Plaintiff's case, the ALJ assigned "great weight" to Dr. Maiden's opinion but did not otherwise account for the mental limitations found by the psychologist such as "difficulty maintaining attention and concentration for prolonged periods of time," "maintaining a regular schedule," "making appropriate decisions," and "dealing with stress." Tr. at 344. Although the ALJ limited Plaintiff to simple unskilled work in the RFC, he concluded that he could occasionally interact with the public and had no limitations interacting with co-workers and supervisors. Given the ample evidence of Plaintiff's general inability to function mentally, this was erroneous. *See* Tr. at 358 (Plaintiff's long time psychiatrist, Dr. Goldin, opining that Plaintiff had poor memory, appetite disturbance, sleep disturbance, mood disturbance, emotional lability, suicidal ideations, oddities of thought, perception, speech or behavior, illogical thinking, obsessions or compulsion, and hostility or irritability); 360 (Plaintiff's psychiatrist finding that he was markedly limited in his ability to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerance, to sustain an ordinary routine without supervision, to work in coordination with or proximity to others without being distracted by them, to complete a normal work week without interruptions from psychologically based symptoms, to interact with the general public, to get along

with co-workers or peers without distracting them or exhibiting behavioral extremes, or to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness); 381 (noting in September 2012, that Plaintiff had become bothered by the asymmetry of the hair on his arms and legs, and had tried tweezing, shaving, and singeing the hair with a lighter).

The ALJ was not required to incorporate all the limitations found by Dr. Maiden into the RFC. However, having given Dr. Maiden's opinion great weight, he was required to explain his rationale for rejecting these limitations. *See Dotson*, 2018 WL 3064195, at *3; *Dioguardi*, 445 F. Supp. 2d at 297. The ALJ's failure to do so is especially problematic given that he rejected all of the other opinions of record (Tr. at 442), and that the limitations that the ALJ failed to adopt relate to Plaintiff's ability to handle stress.

Stress is "highly individualized," and an ALJ must make "specific findings about the nature of a claimant's stress, the circumstances that trigger it, and how those factors affect his ability to work." *Stadler v. Barnhart*, 464 F. Supp. 2d 183, 189 (W.D.N.Y. 2006) (citing SSR 85–15) (internal quotations omitted); *see Welch v. Chater*, 923 F.Supp. 17, 21 (W.D.N.Y. 1996) ("Although a particular job may appear to involve little stress, it may, in fact, be stressful and beyond the capabilities of an individual with particular mental impairments."); *Booker v. Colvin*, No. 14-CV-407S, 2015 WL 4603958, at *3 (W.D.N.Y. July 30, 2015) (stating that an ALJ must "specifically inquire and analyze a claimant's ability to manage stress"). An ALJ's failure to properly evaluate

how stress may impact a claimant's ability to his job warrants remand. *Collins v. Colvin*, No. 15-CV-423-FPG, 2016 WL 5529424, at *4 (W.D.N.Y. Sept. 30, 2016) (citing *Booker*, 2015 WL 4603958, at *3).

The ALJ failed to make any specific findings about Plaintiff's ability to handle stress despite evidence that he was, at times, overwhelmed by it. Among other things, being around people seemed to cause Plaintiff stress. For example, Plaintiff testified that he suffered from "stress and anxiety" (Tr. at 456) sometimes brought about by "a lot of people or talking." Tr. at 458-59. He even testified that he skipped holiday gatherings because they were stressful to him, opting instead to spend them alone. Tr. at 475, 460-61 (Plaintiff testifying that when he is in a stressful situation, "I'll get out, leave, go somewhere and be, be alone").

Despite this evidence, the ALJ found that Plaintiff had no limitations in interacting with co-workers or supervisors, provided he was performing simple, unskilled work. This conclusion is not supported by substantial evidence. The general restriction to simple, unskilled work is insufficient given the ample record evidence suggesting that Plaintiff could not function when he became stressed. *McCann v. Comm'r of Soc. Sec.*, No. 1:18-CV00472 EAW, 2020 WL 207134, at *4 (W.D.N.Y. Jan. 13, 2020) (holding that an "RFC assessment limiting Plaintiff to simple, unskilled work does not account for the factors influencing Plaintiff's ability to handle stress at work"); *see also Corbeil v. Saul*, No. 17-CV-01321, 2019 WL 2590606, at *6 (W.D.N.Y. June 25, 2019) (reasoning that the ALJ "was required to do more than merely limit [claimant's] RFC to simple work");

*McConnell v. Comm'r of Soc. Sec.*, No. 19-CV-827S, 2020 WL 4696557, at *5 (W.D.N.Y. Aug. 13, 2020) (stating that the requirement to analyze a claimant's ability to handle stress applies "even if the ALJ concludes a claimant can perform 'low-stress' jobs"); *Williams v. Comm'r of Soc. Sec.*, No. 18- CV-1027, 2020 WL 4904947, at *6 (W.D.N.Y. Aug. 20, 2020) (citing *Meyers v. Comm'r of Soc. Sec.*, No. 1:18-CV-1476, 2020 WL 923413, at *5 (W.D.N.Y. Feb. 26, 2020)) (collecting cases holding that an ALJ must explain a claimant's capacity for work in light of stress limitations).

The ALJ's errors in failing to: (1) adopt Dr. Maiden's stress limitations; (2) explain why he did not adopt those limitations while otherwise crediting the psychologist's opinion; or (3) assess Plaintiff's ability to handle stress, compel remand. *See, e.g., Rackard v. Saul*, No. 19-CV-6357L, 2020 WL 5250512, at *3 (W.D.N.Y. Sept. 3, 2020) (remanding after the ALJ gave "significant weight" to a medical opinion but the RFC "did not fully incorporate the limitations it described"); *Poole v. Comm'r of Soc. Sec.*, No. 1:18-CV-0267 (WBC), 2020 WL 4805735, at *5-6 (W.D.N.Y. Aug. 18, 2020) (remanding case where the ALJ assigned "partial weight" to the consultative examiner's opinion, but failed to explain why he rejected the doctor's moderate to marked limitation in standing); *Saunders v. Saul*, No. 19-CV-0270L, 2020 WL 4208250, at *2 (W.D.N.Y. July 22, 2020) (remanding case where the ALJ assigned "significant weight" to an opinion assigning "moderate to severe" overhead restrictions while allowing for occasional reaching with frequent handling and fingering). Remanding this case for a more detailed stress assessment is especially appropriate because the vocational expert explicitly testified that if a person with Plaintiff's limitations also needed constant

supervision or unscheduled breaks (10 minutes every hour throughout the day), there would be no work that person could perform. Tr. at 466.

Based on the foregoing, this Court finds that the ALJ's decision is not supported by substantial evidence. On remand, the ALJ must reevaluate the limitations assessed by Dr. Maiden and analyze, in detail, how Plaintiff's stress impacts his ability to work.

## CONCLUSION

For the reasons stated herein, Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is hereby GRANTED, the Commissioner's motion for judgment on the pleadings (Dkt. No. 13) is DENIED, and the case is remanded for further proceedings consistent with this decision. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

DATED: Buffalo, New York
June 11, 2021

*s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**